CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 06 2016

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| ISRAEL RAY COOPER, | ) | CASE NO. 7:15CV00572 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| WARDEN B. A. WRIGHT, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant(s). | ) | |

This civil rights action filed pursuant to 42 U.S.C. § 1983 comes before the court on a motion for summary judgment by the defendant prison officials, supported by affidavits. Plaintiff Israel Ray Cooper, a Virginia inmate proceeding pro se, has responded, making the matter ripe for disposition.[1] After review of the parties' submissions, the court concludes that material factual disputes preclude summary judgment on Cooper's claim that two officers used excessive force against him, and this matter will be set for trial. The court will, however, grant summary judgment for defendants as to Cooper's remaining claims.

## I.

Cooper's submissions allege the following sequence of events related to his claims. On October 22, 2014, River North Correctional Center ("River North") Sergeant ("Sgt.") Lundy and Officer Leagan came to Cooper's cell[2] and allegedly ordered, "[C]uff up or be sprayed with mace." (Compl. 5, ECF No. 1.) Cooper complied. The officers locked him in a shower stall in

---

[1] Months after submitting his response to defendants' motion, Cooper has filed a motion seeking production of additional documents and video footage of the October 2014 use of force incident. Defendants have presented evidence that this video footage is no longer available, and Cooper fails to demonstrate that any of the requested discovery materials are necessary to his summary judgment response. Accordingly, the court concludes that defendants' motion is ripe for decision, and will separately address Cooper's pending discovery motion in preparation for trial.

[2] At the time of the alleged constitutional violations, Cooper was incarcerated at River North. Currently, he is confined at Red Onion State Prison.

the segregation unit with his hands still cuffed behind his back. Leagan then sprayed Cooper with mace "even though he posed no threat to . . . safety," and Sgt. Lundy "began assaulting Cooper's hands while cuffed." (Id.) Cooper alleges that he suffered "nerve damage to [his] hand" during the incident. (Pl.'s Resp. 1, 4, ECF No. 25.) Cooper received three disciplinary charges—one for attempting to spit at staff and two for possession of contraband.

After Sgt. Lundy and Leagan moved Cooper to segregation on October 22, they also allegedly searched Cooper's personal property items without preparing a proper inventory and "threw away, lost or misplaced" numerous items. (Id. 2.) Warden Wright ruled Cooper's grievance about this property to be "founded," because the officers had not provided Cooper with an inventory of his property items. Cooper was reimbursed $82.34 for the monetary value of the missing or damaged property items.

As a result of the disciplinary charges, Cooper spent two months in segregation. During disciplinary appeal proceedings, Warden Wright reviewed surveillance camera footage of the incident and dismissed the attempted spitting charge for insufficient evidence. Cooper was found not guilty of possessing a sex doll confiscated from his cell. He pleaded guilty, however, to possessing razors that were found in his shoe and contends they were pencil sharpeners, not weapons.

Cooper also filed grievances about not receiving proper notice of all items confiscated as contraband after the cell search on October 22, and Warden Wright found that this omission had violated policy. Officer Shepherd served Cooper with an incomplete confiscation form on October 22. Shepherd later served a belated confiscation form on November 5, stating that numerous photographs of children had been removed from Cooper's cell. Cooper then had an

2

opportunity to dispute this confiscation through the grievance procedures, but the items have not been returned to him.

Cooper brought this § 1983 action against Warden Wright, Lieutenant P. A. Tincher, Sgt. Lundy, and Officers Leagan and Shepherd. He raises three claims: (1) Lundy and Leagan fabricated disciplinary charges against Cooper; failed to inventory his personal property items; and lost or destroyed several of his property items; (2) Shepherd violated prison policy regarding notice of confiscated property; and (3) Lundy and Leagan used excessive force against Cooper. Cooper also alleges that the warden and Lt. Tincher are liable as supervisory officials for the violations allegedly committed by their subordinates.

II.

A. Standard of Review.

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The court must draw all reasonable inferences from the facts in favor of Cooper, the nonmoving party. Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004).

B. Policy Violations

Cooper contends that he is entitled to damages under § 1983 because defendants admit that officers failed to follow prison policies on several occasions. To state a cause of action under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and

3

laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted). "[I]t is well settled that violations of state law cannot provide the basis for a due process claim" under § 1983. Weller v. Dep't of Social Services, 901 F.2d 387, 392 (4th Cir. 1990) (citation omitted). Similarly, a state's failure to abide by its own procedural regulations is not a federal due process issue, Riccio v. Cnty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990), and is not actionable under § 1983. Thus, Cooper's frustrations that prison officials failed to comply with prison regulations—by not properly completing or serving notice of confiscation or inventory of his personal property items—do not provide a basis for any claim under § 1983. Therefore, the court will grant summary judgment for all defendants on Cooper's claims alleging violations of prison policies.

## C. Procedural Due Process

Cooper has also stated no constitutional claim that he was deprived of liberty or property interests without due process.

> The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. [Rather, the inmate] has the right not to be deprived of a protected liberty interest without due process of law.

Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986); see also Richardson v. Ray, 492 Fed. App'x 395, 396 (4th Cir. 2012) (holding that inmate's claim of false disciplinary charge generally cannot state § 1983 claim) (citing Moore v. Plaster, 266 F.3d 928, 931-33 (8th Cir. 2001) (finding retaliatory-discipline claim may proceed where disciplinary action is not supported by "some evidence"); Freeman, 808 F.2d at 952-53 (holding that, so long as procedural requirements are satisfied, mere allegations of falsified evidence do not state § 1983 claim).

4

"To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (internal citations omitted). An inmate's federally protected liberty interests created by state law "are limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Cooper first contends that the later-dismissed disciplinary charges for attempted spitting and for possession of contraband somehow violated his rights by causing him to be placed in segregation for two months. If the challenged status change, such as segregated confinement, does not impose "atypical and significant hardship" on the inmate or "inevitably affect the duration of his sentence," however, then he has no federally protected liberty interest, and he is not entitled to federal due process protections before prison officials may implement that status change. Id. at 486-87. Mere limitations on privileges, property, and activities, and even disciplinary actions, "in response to misconduct fall[ ] within the expected perimeters of the sentence imposed by a court of law," and as such, cannot qualify as harsh or atypical so as to create a protected liberty interest. Id. at 485.

Cooper does not describe the conditions in segregation during his two-month term there. Certainly, he fails to allege facts showing that this status imposes more restrictive conditions than are routinely imposed on inmates segregated for administrative or protective purposes.

5

Thus, the court concludes that Cooper fails to demonstrate any protected liberty interest in avoiding a short term in segregation during disciplinary proceedings. Accordingly, he has no federal due process claim related to this disciplinary charges. Moreover, the record clearly reflects that Cooper did receive procedural protections related to these charges: notice of the charge, a hearing, and conviction based on some evidence (the testimony of the officers who used force against him). Most importantly, Cooper pursued an appeal, during which the warden overturned and expunged two convictions, based on his assessment of the video footage and the lack of evidence that the sex doll belonged to Cooper rather than his cell mate. Far from being denied due process, Cooper received this protection and succeeded in having his convictions invalidated. For the stated reasons, the court will grant defendants' motion for summary judgment as to Cooper's due process claims regarding his disciplinary charges.[3]

Cooper also states no due process claim actionable under § 1983 regarding the loss or destruction of his property items. "Because the protections of the Due Process Clause are not triggered by the 'mere failure to take reasonable care,' negligent deprivations are not actionable under § 1983." Lovelace v. Lee, 472 F.3d 174, 202 (4th Cir. 2006) (quoting Pink v. Lester, 52 F.3d 73, 75 (4th Cir. 1995); see also Daniels v. Williams, 474 U.S. 327, 328 (1986) ("[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property."). Thus, to the extent that prison officials' negligent or inadvertent acts caused loss or damage of Cooper's property, he has not suffered a deprivation of constitutional significance that triggered any federally required procedural protections.

---

[3] Cooper apparently believes that dismissal of the disciplinary charge for trying to spit on staff is conclusive evidence that Lundy and Leagan used excessive force. Cooper is mistaken. An Eighth Amendment claim of excessive force must be analyzed under a completely different legal standard than the one Warden Wright employed in deciding to dismiss Cooper's disciplinary charge. See Whitley v. Albers, 475 U.S. 312, 319 (1986) (holding that "only the unnecessary and wanton infliction of pain" violates Eighth Amendment). Thus, while the warden's finding will be relevant to Cooper's excessive force case at trial, it does not foreclose defendants' defense that they did not use unconstitutional force against Cooper.

Similarly, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). During Cooper's grievance proceedings about his property, a prison administrator found that officials did not follow prison regulations related to timely notice of confiscation and property inventory. Such random, unauthorized acts violated Cooper's constitutional due process rights only if he had no meaningful postdeprivation remedy for the loss. Cooper admits that he had a postdeprivation remedy through the prison's grievance procedures and received compensation for his lost and damaged property items. He also fails to demonstrate that postdeprivation remedies were not available to dispute the confiscation of his photographs. Finally, Cooper also possessed remedies under Virginia state law to seek reimbursement for the value of these items. See, e.g., Va. Code § 8.01-195.3 (Virginia Tort Claims Act). Thus, it is clear that Cooper cannot prevail in a constitutional claim under § 1983 for the deprivation of his property. Hudson, 468 U.S. at 535-36 (regarding the availability and adequacy of state court remedies under Virginia law for alleged destruction of property). Accordingly, the court will grant summary judgment for all defendants on Cooper's due process claims.[4]

## D. Excessive Force Claims

The Eighth Amendment does not prohibit all application of force or infliction of pain against prisoners. United States v. Gore, 592 F.3d 489, 494 (4th Cir. 2010). In the excessive force context, "only the unnecessary and wanton infliction of pain" rises to the level of a constitutional violation. Whitley v. Albers, 475 U.S. 312, 319 (1986). An excessive force claim

---

[4] The policy violations and due process claims are the only portion of Cooper's complaint in which Defendant Shepherd is implicated. Accordingly, the court will grant summary judgment for this defendant.

has two components, one subjective and one objective. Specifically, the court must determine whether a specific prison official "acted with a sufficiently culpable state of mind and [whether] the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (internal quotation marks and citation omitted).

In addressing the subjective component, the court must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 5. Factors the court may consider include "the need for the application of force, the relationship between the need and the amount of force that was used, . . . the extent of injury inflicted," "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." Whitley, 475 U.S. at 321. If "the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain," the claim survives summary judgment on the subjective component. Id.

In addressing the less demanding, objective component under Hudson, the court asks whether the force applied was "nontrivial." Wilkins v. Gaddy, 559 U.S. 34, 39 (2010). The extent of the inmate's injury is a factor in this inquiry, as it "may suggest whether the use of force could plausibly have been thought necessary in a particular situation" or may "provide some indication of the amount of force applied." Id. at 37 (internal quotation marks and citations omitted).

Defendants' version of events on October 22 and 23, 2014, summarized here, differs markedly from Cooper's account. Leagan and Lundy say that they went to Cooper's cell to perform a shakedown after receiving a tip that Cooper had razor blades hidden in his sandals, a handmade sex doll, and a ring that came apart to form a stabbing weapon. Cooper failed to

8

comply with five orders to present himself to be restrained, and once in restraints, his disruptive behavior led to his placement (with difficulty) in the segregation shower during the cell search. Once there, Cooper allegedly tried to pull the handcuff tether into the shower with him. Lundy states that he heard Cooper "make a spit like noise and turn his head to spit towards staff." (Lundy Aff. ¶ 6, ECF No. 28-1.) In response, Lundy administered a short burst of OC spray, and the officers then managed to remove the tether from Cooper's restraints.

Cooper contends that the Rapid Eye footage of the October 22 use of force incident would prove that he was not combative and did not try to spit on anyone. As already indicated, defendants state that under the operation of prison policies in effect in 2014, this footage no longer exists.[5] The court construes Cooper's contentions about the video as his personal statement that he did not commit the misbehaviors described by Leagan and Lundy as justification for their use of force. This statement is corroborated by the warden's decision, based on the video footage, that the evidence did not support a finding of guilt on the charge that Cooper tried to spit at anyone. Thus finding genuine issues of material fact in dispute as to Cooper's claims of excessive force, and as to key elements of defendants' defense of qualified immunity, the court will deny summary judgment for Leagan and Lundy. See Buonocore v. Harris, 65 F.3d 347, 359 (4th Cir. 1995) (finding summary judgment not proper when resolution of qualified immunity question and claim itself both depend upon determining what happened).

---

[5] Defendants explain that at River North, digital video recorder ("DVR") systems in various locations throughout the facility record and store video footage from multiple Rapid Eye cameras. Each DVR is capable of retaining footage for a time before recording new footage over the prior footage. The retention time varies according to the amount of movement recorded in the particular areas covered by each DVR's cameras in any given period. Defendants state that the facility does not have the capacity to retain all Rapid Eye video.

When Warden Wright's office investigated Cooper's disciplinary appeal regarding the October 2014 incident, the video footage was still available. The warden reviewed it and found that it did not support the officers' report of Cooper's conduct. The video policy then in effect, however, did not require long-term retention of Rapid Eye footage involving use of force incidents unless a formal institutional investigation was conducted or other staff or the offender specifically requested retention of the footage. Because the investigator's office did not launch a formal investigation of the October 22 use of force incident, and that office did not receive any requests from Cooper for retention of the Rapid Eye video of that incident, the video was not retained and is no longer available. Therefore, the court is unable to review it in support of Cooper's excessive force claims, as he has requested.

## E. Supervisory Defendants

Cooper argues that Defendant Tincher should be liable because he supervised the officers who allegedly used excessive force. Cooper also argues that Warden Wright is "legally responsible" for operations at River North, including constitutional and policy violations by his subordinates. These contentions do not state a cognizable claim under § 1983. Officials may not be held liable under § 1983 for the unconstitutional conduct of their subordinates under a theory of respondeat superior. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Because Cooper does not state facts showing that Tincher or Wright, through his own "individual actions [or inactions], has violated the Constitution" or caused others to violate it, Cooper's § 1983 claim against this defendant fails. Id.; Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984) (holding that supervisory liability under § 1983 requires showings that official had actual or constructive knowledge of risk of constitutional injury and was deliberately indifferent to that risk, and that there is an affirmative causal link between the injury and supervisory official's inaction). The court will grant summary judgment for Tincher and Wright.

## III.

For the stated reasons, the court will grant defendants' motion for summary judgment in part and deny it in part. The court will grant the motion as to all claims and defendants except Cooper's claims of excessive force against Lundy and Leagan. These claims will be set for a jury trial. An appropriate order will issue herewith.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for defendants.

ENTER: This _6th_ day of December, 2016.

_____
Chief United States District Judge

10